**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHUNG YIM, | |
| Plaintiff, | |
| v. | No. 19-cv-7077 |
| | Judge Franklin U. Valderrama |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Chung Yim (Plaintiff), a veteran, underwent a dental implant and sinus elevation surgery at the Captain James A. Lovell Federal Health Care Center (Lovell FHCC) in North Chicago, Illinois. The surgery was performed by Dr. Lindsay Powers. Days after the surgery, Plaintiff began to complain of excruciating pain at the site of the implant. Plaintiff subsequently developed numbness on the right side of his face and decreased sense of taste and smell. Eventually, the implant was removed in an attempt to alleviate Plaintiff's pain, to no avail. Plaintiff filed suit against the United States of America (Defendant) pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.,* alleging that Dr. Powers negligently performed the surgery.

R.[1] 1, Compl. The United States is a Defendant in this action because Dr. Powers worked at a health care facility operated by the United States.[2]

Before the Court is Defendant's Motion for Partial Summary Judgment (the Motion) on the specific issue of causation with respect to Plaintiff's ongoing health problems. R. 61, Mot. Summ. J. For the reasons set forth below, Defendant's Partial Motion for Summary Judgment is denied.

## Background

### I.    Local Rule 56.1 Violation

Before delving into the merits of the Motion, the Court first addresses Defendant's contention that Plaintiff violated Local Rule 56.1.

Local Rule 56.1 governs summary judgment briefing in the Northern District of Illinois. When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(L.R. 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acq. Co., LLC v. AIP Products Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1)). The L.R. 56.1 Statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and either admit each fact,

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b).

2

or, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.*; *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). If the non-moving party asserts additional facts not included in the moving party's statement of facts, the non-moving party is to file a statement of additional material facts "that attaches any cited evidentiary material not attached to the [moving party's statement of facts] or the non-moving party's response [thereto]." N.D. Ill. Local R. 56.1(b)(3). The Rule "aims to make summary-judgement decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGo*, Inc., 919 F.3d 405, 415 (7th Cir. 2019). The Seventh Circuit has repeated that "district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011); *Daniels v. Janca*, 2019 WL 2772525, at *1 (N.D. Ill. July 2, 2019) ("The Seventh Circuit has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1.") (cleaned up).[3]

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Defendant argues that Plaintiff violated Local Rule 56.1 by "citing exhibits directly rather than citing either party's statement of fact." R. 70, Reply at 2–3. Defendant asks the Court to disregard not only Plaintiff's direct citations to exhibits on pages 7 through 12 of his response brief, but also any arguments on those pages as they rely on improperly presented evidence. *Id.* at 3; *see* R. 66, Resp. at 7–12.

The Court agrees with Defendant that Plaintiff violated Local Rule 56.1(g) by citing to the exhibits and not to the statement of facts. "It is essential to the court's proper consideration of a party's argument for the party to reference the Local Rule 56.1 statements and responses and not the record materials themselves." *Little v. Ill. Dept. of Pub. Health*, 2020 WL 1530736, at *1 (N.D. Ill. Mar. 31, 2020) (disregarding facts that were set forth in the response brief, but not within a statement of facts, including when plaintiff cited directly to the record instead of a statement of fact). However, the Court disagrees that the arguments found on pages 9 through 12 should be disregarded because Plaintiff failed to comply with Local Rule 56.1.

As previously noted, courts have discretion to require strict compliance with Local Rule 56.1. *Kreg Therapeutics, Inc.*, 919 F.3d at 414. The Seventh Circuit has instructed that "district courts must apply Rule 56.1 in the specific context of the litigation before it and determine whether the submission at issue adequately complies with the purpose and intent of the Rule or impedes the Rule's effectiveness." *Cracco*, 559 F.3d 632. Here, Defendant argues that Plaintiff's failure to follow Local Rule 56.1 "improperly prevents the moving party from responding to them according to the LR 56.1 procedure." Memo. Summ. J. at 3. The Court takes issue with this

argument for two reasons: (1) Defendant does not explain how Plaintiff's failure prevents Defendant from properly responding; and (2) Defendant is in fact able to respond in accordance with LR 56.1. Therefore, while Plaintiff did not cite to the statement of facts to support his arguments, he did cite to the record, allowing Defendant to reply to Plaintiff's response. In other words, notwithstanding Plaintiff's failure to comply with the Local Rule, his submission complied with the purpose and intent of Rule 56. As a result, the Court accepts Plaintiff's arguments made on pages 7 through 12 in his response as long as the fact is supported by the record. *See also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Defendant next argues that Plaintiff has made baseless denials of certain facts contained in Defendant's statement of undisputed facts, presumably in violation of Local Rule 56.1. Local Rule 56.1(e)(2) provides that Local Rule 56.1(b)(2) and 56.1(c)(2) responses "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." N.D. Ill. L.R. 56.1(e)(2). Where the nonmovant "denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such denial." *Ammons*, 368 F.3d at 817. "Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate." *Id*. As the Seventh Circuit has instructed, "when a responding party's statement fails to dispute the facts set forth in the moving party's statement in the

manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d 632. The Court addresses each alleged violation in turn.

First, Defendant contends that Plaintiff's denial of DSOF[4] ¶ 17 is improper. In DSOF ¶ 17, Defendant asserts that, on April 25, 2019, Plaintiff "for the first time reported numbness on the outside and inside of the right cheek and the right side of the tongue." Plaintiff denies the statement, claiming that Plaintiff had previously reported "numbness on the right side of his face." Pl.'s Resp. DSOF ¶ 17. Which, according to Plaintiff, "necessarily includes the cheek." Pl.'s Resp. to DSOF ¶ 17. The Court agrees in part with Defendant that the denial is improper. The Court agrees with Defendant that denial is improper as to Plaintiff first reporting numbness on the right side of his tongue in April 2019, as Dr. William Conte in his deposition testimony specifically states that Plaintiff first felt numbness in his tongue in April 2019, R. 63, Exh. B, Conte Dep. Tr. at 44:2–7, 50:6–14, and an April 25, 2019 medical note likewise indicates that Plaintiff reported feeling numbness inside and outside of his right check and the right side of his tongue, R. 63, Exh. L, April 25, 2019 Note. However, the Court agrees with Plaintiff that the denial is proper as to Plaintiff first reporting numbness on the right side of his face as early as October 10, 2018. R. 63, Exh. J. It is reasonable to infer that the numbness on the right side of Plaintiff's face included his cheek. *See* Pl.'s Resp. DSOF ¶ 17.

---

[4]Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Defendant's Statement of Facts [R. 63]; "Pl.'s Resp. DSOF" for Plaintiff's Response to Defendant's Statement of Facts [R.69]; "PSOF" for Plaintiff's Statement of Additional Facts [R. 67]; and "Def.'s Resp. PSOF" for Defendant's Response to Plaintiff's Statement of Additional Facts [R. 71].

Therefore, DSOF ¶ 17 is admitted as to the assertion that Plaintiff reported numbness on the right side of his tongue for the first time on April 25, 2019 and is denied as to the assertion that he first reported numbness to the inside of his right cheek on April 25, 2019.

Next up is DSOF ¶¶ 12 and 13, which state that Plaintiff reported for the first time on October 1, 2018, that he was experiencing numbness on the right side of his face and experiencing a decreased ability to taste and smell. DSOF ¶¶ 12–13. Plaintiff denied that statement of fact on the basis that he told his doctors on October 1 that the symptoms had begun before October 1. Pl.'s Resp. to DSOF ¶¶ 12–13. The Court agrees that the denial is improper as DSOF ¶¶ 12–13 did not state when Plaintiff first experienced the symptoms. Rather, it goes to when Plaintiff reported symptoms for the first time, not whether he reported during that meeting that he had previously experienced the symptoms.

Defendant next challenges Plaintiff's response to DSOF ¶ 42, which states that "Dr. Conte considers it 'a possibility' that Plaintiff experienced numbness on the right side of his tongue for more than half a year without mentioning it to a doctor." *Id.* Plaintiff denied the statement, citing Dr. Conte's testimony that the possibility never came up in his doctor's visits because he perceived the pain and numbness on the right-side of his face as encompassing his tongue. Pl.'s Resp. DSOF ¶ 42. A review of the record, however, reveals that the statement in DSOF ¶ 42 is accurate. Dr. Conte specifically testifies that "it's a possibility because he was mostly complaining of pain." Conte Dep. Tr. at 62:5–16. Therefore, DSOF ¶ 42 is admitted.

Last up is DSOF ¶ 56. That statement states that Dr. Randolph Resnick has opined that there is no support for the proposition that Dr. Powers deviated from the applicable standard of care in treating Plaintiff. Plaintiff denied the statement, pointing to his own expert's opinions. Pl.'s Resp. DSOF ¶ 42. Again, a review of the record reveals that that is what Dr. Resnick stated. *See* Reply at 5. True, Plaintiff's expert has a different opinion than Defendant's expert, however, that is not a basis to dispute what Dr. Resnick's opinion is regarding the standard of care. That fact should have been admitted. As such, the Court deems it admitted.

The Court having resolved the preliminary issues, now turns to the merits of the Motion.

## II.    Material Facts

The following undisputed facts are set forth as favorably to Plaintiff, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). On summary judgment, the Court assumes the truth of those facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Plaintiff, a veteran, underwent a dental implant and sinus elevation procedure on July 13, 2018 at the Lovell FHCC, a veterans affairs (VA) hospital, in North Chicago, Illinois. R. 62, Memo. Summ. J. at 1; DSOF ¶¶ 3–5. Dr. Powers, a periodontist, performed the procedure. DSOF ¶ 5. The site of the procedure was Plaintiff's "number four" tooth, which is found in the upper-right corner of his mouth. *Id.* Two days later, Plaintiff was seen in the emergency room complaining of pain at

the implant site. PSOF ¶ 1. Plaintiff continued to report pain at the site of the implant and pressure on his head and cheek following the procedure. DSOF ¶ 6; PSOF ¶¶ 2–3. On August 23, 2018, Plaintiff complained of pain and pressure and reported that it felt like his head was "in a vise." DSOF ¶¶ 7–8. The doctor found tenderness over the right side of Plaintiff's face and concluded that he had "[r]ight-sided facial pain associated with implant placement." PSOF ¶ 5.

Two months after the procedure, on September 12, 2018, Dr. Aaron Cwik removed the dental implant. DSOF ¶ 10. Dr. Cwik noted that the implant was mobile, purulent drainage was present, there was bone loss and "sinus communication at apex of osteotomy." PSOF ¶ 9. Dr. Cwik recommended that Plaintiff see an otorhinolaryngology (ENT) for debridement of the maxillary sinus. *Id.*

On September 17, 2018, Dr. Narendra Desai, an ENT, examined Plaintiff and noted that after the dental implant procedure, Plaintiff started having a severe sinus infection, but despite the implant being removed, Plaintiff had "persistent sinus infection with pressure and pain over the right side of the sinus." PSOF ¶ 10. Three weeks later, on October 1, 2018, Plaintiff was still complaining of pressure and numbness on the right side of his face, as well as a decrease in his sense of taste and smell. *Id.* ¶ 11. Nine days later, on October 10, 2018, Plaintiff, on a visit with Dr. Gregory Kruper, another ENT, was still complaining of right-sided facial pain and pressure. *Id.* ¶ 12. Dr. Kruper recommended sinus surgery. *Id.*

Plaintiff underwent a right maxillary antrostomy on October 16, 2018. PSOF ¶ 13. Plaintiff, however, continued to complain of facial pain, pressure, and numbness, but reported it was better than before the sinus surgery. *Id.*

In an April 2019 visit, Plaintiff reported pressure and numbness in the right side of his face, including the inside and outside of his right cheek and right side of the tongue and a loss of taste and smell. PSOF ¶ 14. Dr. Semyon Shulman, a neurologist, found, among other things, diminished touch, and taste sensation on the right side of Plaintiff's tongue. *Id.* ¶ 15. Dr. Shulman concluded that Plaintiff suffers "with pain and paresthesia on the right side of his face. There are symptoms of right trigeminal neuropathy and/or atypical facial pain." *Id.* ¶ 17.

Plaintiff filed[5] this suit against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* alleging not only that Dr. Powers negligently performed the surgery but that her negligence also caused his ongoing pain, pressure, numbness, and loss of taste and smell. *See generally* Compl. Defendant now moves for partial summary judgment on the issue of causation with respect to Plaintiff's claims of ongoing pain, pressure, numbness, and loss of taste and smell. *See generally* Mot. Summ. J.[6]

---

[5]Plaintiff complied with 28 U.S.C. § 2675 of the Federal Tort Claims Act by serving notice of the claim upon the VA within two years of the incident forming the basis of the suit. R. 10, Def.'s Answer ¶ 1. After waiting six months from the date of submitting his claim, and after receiving a denial of his claim from the Office of General Counsel for the VA, Plaintiff filed this suit. *Id.* ¶ 5.

[6]Defendant is not seeking summary judgment on causation generally as it pertains to Plaintiff's medical negligence claim, rather the limited issue of causation as to his ongoing condition, and Defendant concedes that "[a] trial may be needed to resolve Plaintiff's claim that the doctor acted negligently in performing the surgery and that the VA inadequately

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2).

---

responded to his complaints of pain in the weeks following the surgery." Memo. Summ. J. at 1.

## Analysis

Plaintiff filed suit against the Defendant under the FTCA alleging that the Defendant negligently performed the dental implant surgery, and that negligence is also the cause of his ongoing pain, pressure, numbness, and loss of taste and smell.

The FTCA "provides a remedy for personal injuries caused by negligent acts of governmental employees acting within the scope of their employment." *Luna v. United States*, 454 F.3d 631, 632 (7th Cir. 2006) (citing 28 U.S.C. § 1346(b)(1)). The FTCA is a limited waiver of the federal government's sovereign immunity, and "exposes the United States to liability for personal injuries as a result of its negligence to the same extent that a private person would be liable under the law of the place where the negligence occurred." *Id.* at 634. An action under the FTCA is governed by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Here, the alleged negligence occurred in Illinois, so Illinois law governs.

Under Illinois law, for Plaintiff to succeed on his medical negligence claim, he must prove that the Defendant owed him a duty of care, the Defendant breached that duty, and the breach was the proximate cause of Plaintiff's injury. *Bowman v. Univ. of Chi. Hosps.* 852 N.E.2d 383, 390 (Ill. App. Ct. 2006). "Medical expert testimony is necessary to prove the elements of medical negligence." *Id.*

Defendant argues that summary judgment is proper because there are no facts in the record that the dental implant procedure caused Plaintiff's ongoing pain, pressure, numbness, and loss of taste and smell. Memo. Summ. J. at 2–3. Defendant advances two arguments in support. First, there is no evidence of causation for

12

Plaintiff's ongoing issues. *Id*. at 3. And second, Dr. Conte's opinion, which arguably, is the only evidence of causation, is inadmissible because it is unreliable. *Id*. at 9–10. The Court begins with the latter argument first since medical expert testimony is required for Plaintiff's medical negligence claim.

## I.    Admissibility of Dr. Conte's Opinion

The admissibility of expert  testimony is governed by Federal Rule of Evidence (FRE) 702, and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Federal Rules of Evidence 702 allows the admission of testimony by an expert—that is, someone with the requisite "knowledge, skill, experience, training, or education"—to help the trier of fact "understand the evidence or [ ] determine a fact in issue." Fed. R. Evid. 702. An expert witness is permitted to testify when (1) the testimony is "based on sufficient facts or data," (2) the testimony is "the product of reliable principles and methods," and (3) the witness has "reliably applied the principles and methods to the facts of the case." *Id.* The district court serves as the "gate-keeper who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (cleaned up). The "focus of the district court's *Daubert* inquiry must be solely on the principles and methodology, not on the conclusions they generate." *Id.* (cleaned up). That said, even shaky expert testimony may be admissible, assailable by its opponents through cross-examination. *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). Under Rule 702 and *Daubert*, the district court must "engage in a three-step analysis before admitting expert

testimony. The court must determine (1) whether the witness is qualified; (2) whether the expert's methodology is scientifically reliable; and (3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *EEOC v. AutoZone, Inc.*, 2022 WL 4596755, *13 (N.D. Ill. Sept. 30, 2022) (cleaned up). The expert's proponent bears the burden of proving by a preponderance of the evidence the expert's testimony satisfies Rule 702. *See United States v. Saunders*, 826 F.3d. 363, 368 (7th Cir. 2016).

Courts, in assessing the reliability of an expert's opinion, consider: (1) whether the particular scientific theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community. *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003). No one factor is dispositive. *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). The Court's inquiry focuses on the soundness and care with which the expert arrived at her opinion, not on the ultimate correctness of the expert's conclusions. *Id*. As the Seventh Circuit has stated, even a "supremely qualified expert cannot waltz into a courtroom and render opinions unless those opinions are based upon some scientific method." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Defendant does not challenge Dr. Conte's qualifications, nor does it challenge his opinion that Plaintiff has trigeminal neuropathy. Memo. Summ. J. at 4. Rather,

Defendant argues that Dr. Conte's opinion regarding the causation as to Plaintiff's ongoing pain, pressure, and numbness of the right side of his face is inadmissible because it is unreliable and therefore, not relevant. Memo. Summ. J. at 9.

First of all, contends Defendant, Dr. Conte only testified as to the "possibility" and not probability that the surgery caused Plaintiff's ongoing pain, pressure, and numbness of the right side of his face. *Id.* And proximate cause is not established if the expert's causation testimony is "merely possible." *Id.* (citing *Knauerhaze v. Nelson*, 836 N.E.2d 640 (Ill. App. Ct. 2005)). This argument, however, takes Dr. Conte's opinion out of context. In his deposition, Dr. Conte testified that he believed that damage to the lingual nerve caused inflammation that traveled up to other parts of the trigeminal nerve. Conte Dep. Tr. at 51:12–17. True, later in his deposition Dr. Conte states that "it is a possibility" but it is difficult to discern whether he is referring to the possibility of sinusitis or something else causing the swelling. *Id.* at 64:14–20. Throughout his deposition Dr. Conte clearly expressed his opinion that when there is damage to a nerve, the inflammation can then travel up the nerve and that is what occurred here. To the extent Defendant maintains that Dr. Conte was required to express his opinion with absolute certainty, Defendant cites no case in support of that proposition, and the Court finds case law does not require absolute certainty. *See United States v. Cyphers,* 553 F.2d 1064, 1072 (7th Cir. 1977) ("We adhere to the rule that an expert's absolute lack of certainty goes to the weight of his testimony and not its admissibility").

15

Next, asserts Defendant, Dr. Conte's opinion is inadmissible because it is not based on any research or study. Memo. Summ. J. at 10. An opinion is not reliable, submits Defendant, if it has not been subject to peer review and has not been accepted by the relevant scientific community. *Id.* (citing *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002)). This argument is a non-starter.

While an expert opinion not subject to peer review or accepted within the relevant scientific community *may not* be reliable under *Daubert*, it is not a requirement for reliability. *Chapman,* 297 F.3d 688. The only case cited by Defendant, *Chapman*, does not stand for the proposition advanced by Defendant. *Id.* It is true that in that case the Seventh Circuit found the expert's testimony unreliable and thus inadmissible. *Id.* However, it did so because the expert, among other things, did not have any training in electrical engineering, had never published in the field, offered no study in support of his theory, and did not conduct any scientific tests or experiments to arrive at his conclusion. *Id.* at 688. Indeed, observed the court, the expert never produced any studies, tests, or experiments to justify or verify his conclusions, "despite his representation to the court that they would be forthcoming." *Id.* In short, the expert's novel theory as to why a circuit breaker failed to trip was not supported by any specific testing or substantiated in any other way. By contrast here, Dr. Conte's opinion is based upon his experience as a neurologist who has seen patients with nerve injuries following dental procedures. The fact that he knows of no study in support of his opinion is good fodder for cross-examination, but is not a basis to exclude his opinion. Expert testimony is not unreliable "simply because it is

16

founded on [a witness's] experience rather than on data." *Metavante Corp., v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). An expert must, however, "explain the methodologies and principles that support his opinion; he cannot simply assert a bottom line." *Id.* (Cleaned up). Dr. Conte's opinions, albeit barely, meet this threshold.

Defendant next argues that Dr. Conte's opinion is not reliable because Dr. Conte has not "adequately accounted for obvious alternative explanations," which is a factor that courts consider when assessing an expert opinion's reliability. Memo. Summ. J. at 9. The Seventh Circuit, Defendant submits, has held that an expert's causation opinion is not admissible where an expert does not methodically consider other possible causes of the plaintiff's injury and explain how and why she ruled them out." Memo. Summ. J. at 10 (citing *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 705 (7th Cir. 2015)). Unsurprisingly, Plaintiff disagrees. Dr. Conte, Plaintiff counters, ruled out other possibilities because Plaintiff's symptoms were not consistent with those of other possibilities such as trigeminal neuralgia or atypical face pain. Resp. at 12.

Relevant here is whether Dr. Conte conducted some sort of differential diagnosis. A differential diagnosis is a method whereby a physician "systematically compares and contrasts clinical findings from a patient's medical history to determine which of two or more diseases with similar systems is the one from which the patient is suffering." *Meyers v. Ill. Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "Put in simple terms, a differential diagnosis provides a framework in which all reasonable hypotheses are ruled in as possible causes of a medical problem and some of these

possible causes are then ruled out to the extent . . . ." *Robinson v. Davol, Inc.*, 913 F.3d 690, 696 (7th Cir. 2019). "Differential diagnosis actually refers to a method of diagnosing an ailment, not determining its cause." *Higgins*, 794 F.3d at 705.[7]

Here, contrary to Defendant's suggestion, Dr. Conte, a board-certified neurologist, ruled out another potential cause of Plaintiff's complaints: trigeminal neuralgia. Conte Dep. Tr. at 36:8–37:22. Dr. Conte testified in his deposition that Plaintiff did not have trigeminal neuralgia because that would be characterized by on and off pain, which Plaintiff did not describe. *Id.* at 36:8–22. Instead, Plaintiff described numbness or lack of sensation, more consistent with trigeminal neuropathy. *Id.* That is, Dr. Conte offered a differential diagnosis. Dr. Conte also noted multiple examinations by different neurologists had demonstrated an objective decease in sensation to the maxillary and mandibular branches of the right trigeminal nerve. Admittedly, Dr. Conte, as Defendant points out, did not explain why Plaintiff's complaint of jaw numbness in 2015 did not undermine his opinion that Plaintiff's numbness was caused by the dental procedure three years later. But again, that fodder for cross-examination, not a basis to exclude an expert opinion.

All in all, the Court finds that Dr. Conte's opinion that Plaintiff's ongoing pain, pressure, and numbness of the right side of his face could have been proximately caused by the dental procedure is sufficiently reliable under *Daubert*.

---

[7]"Differential etiology, on the other hand, is a causation-determining methodology." *Id.* An expert must systematically 'rule in' and 'rule out' potential causes at arriving at his or her ultimate conclusion. *Higgins*, 794 F.3d at 705. Here, Defendant only argues absence of a differential diagnosis, not differential etiology.

## II.    Evidence of Causation

Next, the Court addresses whether Plaintiff provides evidence that nerve damage at the implant site caused Plaintiff's ongoing pain. Defendant insists that it is entitled to partial summary judgment because the evidence submitted by Plaintiff "does not constitute evidence on which a factfinder could conclude that the procedure caused Plaintiff's ongoing problems." Memo. Summ. J. at 4. This is so, contends Defendant, because Dr. Conte has no opinion as to what actually happened to the nerve at site number four. *Id.* A triable fact question, asserts the Defendant, cannot be established by an expert who does not know what happened in the first place. *Id.* Dr. Conte, argues Defendant, fails to explain how nerve damage at the site of the dental implant could cause Plaintiff's ongoing pain, numbness, and other symptoms. *Id.* at 5. Dr. Conte's causation opinion, according to Defendant, is merely based upon the timing of the symptoms. As for his opinion that swelling and inflammation at the site of the procedure could cause some further injury of other areas, Dr. Conte testified that is "a possibility." DSOF ¶ 40. In short, Defendant argues, Dr. Conte's causation opinion is mere speculation or at most, a "merely possible" explanation. Memo. Summ. J. at 6. That is, because the pain was not present before the procedure, started immediately after the procedure, and the trigeminal nerve branches are intimately involved in the mouth, the implant possibly could have caused the ongoing pain. Reply at 11. But timing alone, insists Defendant, is insufficient to support a medical malpractice claim, absent evidence of causation. *Id.*

Predictably, Plaintiff sees it differently. Plaintiff insists that he has provided sufficient evidence to support his position that the trier of fact could find that the implant caused his ongoing problems. Resp. at 5–6. Plaintiff points out that Dr. Conte, a board-certified neurologist, opined that Plaintiff has trigeminal neuropathy. Resp. at 6. Dr. Conte, according to Plaintiff, sees a "fair number of patients with trigeminal nerve problems which are commonly caused by dental issues . . . ." *Id*. Dr. Conte, notes Plaintiff, testified that the characteristics of trigeminal neuropathy are numbness in the trigeminal nerve distribution and decreased sensation in a variety of areas of the face. *Id*. Dr. Conte arrived at this conclusion based on the fact that the pain started immediately after Plaintiff's dental procedure, the pain was not present before the procedure, and that the trigeminal nerve branches are intimately involved in Plaintiff's mouth. *See* DSOF ¶¶ 32–34. Dr. Conte explained that "whenever you get like damage to a nerve, there can be some like inflammation of the nerve that then travels back up the nerve a little bit and then can affect I guess, the other two nerves." *Id*. ¶ 33.

"Under Illinois law, the question of whether a physician's conduct was a proximate cause of the plaintiff's injuries is a question of fact for the trier of fact to decide." *Ford-Sholebo v. United States*, 980 F. Supp. 2d 917, 991 (N.D. Ill. 2013). It is well settled that proximate cause "must be established by expert testimony to a reasonable degree of medical certainty, and the causal connection must not be contingent, speculative, or merely possible." *Id*. (citing *Morisch v. United States*, 653 F.3d 522, 531 (7th Cir. 2011)). The Seventh Circuit has also stated that it is rare that

"the facts [are] so clear that the court can resolve the issue as a matter of law." *Palay v. United States,* 349 F.3d 418, 432–433 (7th Cir. 2003).

Although a very close call, the Court does not find this instance to be one of those rare occasions. Here, Dr. Conte opines that the cause of the trigeminal neuropathy was nerve damage from the tooth implant, but, as Defendant point out, Dr. Conte admits that he does not have an opinion as to what actually happened to the nerve at site number four. Memo. Summ. J. at 4; *see* DSOF ¶ 44 ("I don't have an opinion what actually happened to the nerve."). Plaintiff, on the other hand, argues that Dr. Conte determined that Plaintiff's trigeminal neuropathy was proximately caused by nerve damage from the dental implant because (1) his pain started immediately after the procedure, (2) the numbness was not present before the procedure, and (3) the trigeminal nerve branches are intimately involved with the mouth. Memo. Summ. J. at 4. Dr. Conte's first two reasons are classic *post hoc, ergo propter hoc,* or after this, therefore because of this. Reply at 7. "*Post hoc ergo propter hoc* is not a good way to establish causation." *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 664 (7th Cir. 2005). It is the "name of a logical fallacy, not a means to prove causation." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 313 (7th Cir. 2011). The Court will not independently consider these reasons. As for the last reason, Defendant's expert disagrees with Dr. Conte's theory, opining that it is impossible. Memo. Summ. J. at 7. However, the Court considers the relationship of the trigeminal nerve branches, albeit barely, is enough to bolster Plaintiff's argument that Dr.

Conte's opinions, beyond *post hoc, ergo propter hoc*, are based on a reasonable degree of certainty, and as a challenge to Defendant's expert's opinion. *See* Resp. ¶ 6.

Additionally, because the parties have presented the Court with a "battle of the experts" on the issue of whether an injury at the site of tooth number four caused ongoing symptoms elsewhere in the trigeminal nerve, the fact finder at trial is best positioned to "determine what weight and credibility to give the testimony of each expert and physician." *Ford-Sholebo*, 980 F. Supp. 2d at 981. In short, the Court finds that Dr. Conte's opinion on causation as to Plaintiff's ongoing condition (trigeminal neuropathy) is based on just more than conjecture and speculation and as such, is admissible.

On that basis, the Court finds that Defendant is not entitled to partial summary judgment on the limited issue of causation as to Plaintiff's ongoing pain, pressure, numbness, and loss of smell and taste.

**Conclusion**

For the reasons given above, Defendant's Partial Motion for Summary Judgment [61] is denied.

By March 15, 2024, the parties are directed to file a status report indicating: (1) whether the parties would like a referral to the Magistrate Judge for a settlement conference; (2) whether the parties consent to proceeding with trial before the Magistrate Judge, (3) the anticipated number of days for trial, and (4) the expected number of witnesses.

DATED: March 1, 2024

_____
United States District Judge
Franklin U. Valderrama

23